IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |
|---|---|
| **GERALDINE LYNETTE WEBB**, <br><br> Plaintiff, <br><br> v. <br><br> **EXPERIAN INFORMATION SERVICES, INC.**, <br><br> Defendant. | Case No. 15 C 10355 <br><br> Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Before the Court are the parties' Cross-Motions for Summary Judgment [ECF Nos. 69, 72]. For the reasons stated herein, the Court grants Defendant's Motion and denies Plaintiff's Motion. The Court dismisses this lawsuit in its entirety.

### I. BACKGROUND

Plaintiff Geraldine Lynette Webb ("Webb") brought suit against Defendant Experian Information Solutions, Inc. ("Experian"), alleging violations of the Fair Credit Reporting Act (the "FCRA"). What follows is a summary of the essential facts that are not in dispute.

On April 30, 2014, Webb filed a voluntary petition for Chapter 13 bankruptcy because she could no longer afford mortgage payments on her residential property in Elgin, Illinois. The property was underwater; that is, the balance due

on the mortgage exceeded the fair market value of the property. Webb had no success finding a buyer for the property. Webb's modified Chapter 13 plan, confirmed on June 27, 2014, stated that she was surrendering it to "Bank of America, N.A. in full satisfaction of its claims." (ECF No. 78 ¶ 15.) On January 28, 2015, the bankruptcy court entered a discharge order that, while including "most" of her debts, did not specify which of Webb's accounts were included in the discharge. (*Id.* ¶ 17.) Webb admits that she knew when she filed for bankruptcy that doing so would adversely affect her credit score.

Experian is a credit reporting agency ("CRA") whose business consists of compiling consumer credit information and providing it to others. Experian communicates with creditors (also known as "data furnishers") through an industry-wide automated online system called "e-Oscar." The FCRA provides that a consumer may notify a CRA of a dispute concerning the accuracy of information it maintains in the consumer's credit file, and requires that the CRA then conduct a reasonable reinvestigation of the file. *See,* 15 U.S.C. § 1681i(a)(1)(A). Experian resolves consumer disputes and updates inaccurate information via either an "internal" or "external" investigation-and-update process. If Experian can resolve the dispute with information contained in the consumer's credit file

or produced by the consumer in its dispute letter, Experian processes the dispute "internally" and sends a Dispute Response Notification ("DRN") through e-OSCAR to notify the data furnisher of the changes Experian made. If Experian cannot resolve the dispute internally, it sends the data furnisher an Automated Consumer Dispute Verification ("ACDV") form through e-OSCAR to elicit a response indicating whether the information the furnisher is reporting to Experian is accurate.

On March 4, 2015, Experian received from Webb a dispute letter dated February 9, 2015, along with her bankruptcy discharge order, copies of her driver's license and social security card, and schedules D, E, and F of her bankruptcy petition. In the letter, Webb did not refer to any specific creditor accounts but asked Experian to "update the subject credit file(s) to reflect the discharged status of the debts as indicated on the Final Report from the Trustee." (ECF No. 78 ¶ 41.) The letter did not include the Final Report from the Trustee. The schedules listed five creditor accounts, including Bank of America and Discover Financial Services ("Discover").

At the time Experian received the letter, Webb's Discover account was already reporting as discharged in Chapter 13 bankruptcy. Experian processed Webb's dispute internally, updating the date of discharge for her Discover account and

confirming that it was properly reporting. After making the updates, Experian sent a DRN informing Discover that it had updated the information it maintains for Webb's Discover account and showing how the account was reporting before and after Experian's updates. However, Experian did not do this for Webb's Bank of America account. The Experian agent apparently "overlooked" the fact that Bank of America was listed as a creditor on the Schedule D Webb had submitted. (ECF No. 74 ("Def.'s SOF") ¶ 48.)

On March 11, 2015, Experian formally responded to Webb's dispute letter with an updated disclosure detailing the information Experian had in her credit file. The disclosure shows the unchanged Bank of America account with a "date of status" of "Apr 2014," a monthly payment of $624, a recent balance of "$92,705 as of Apr 2014," and a status of "Open. $1,248 past due as of Apr. 2014." (ECF No. 78 ¶ 49.)

On September 17, 2015, Experian received from Webb a second dispute letter, this time asking Experian explicitly to update her Bank of America account to report it as discharged with a balance due of $0. The letter attached the same information and schedules. At this time, however, Webb's Bank of America account was already reporting as discharged in Chapter 13 bankruptcy with a $0 recent balance, no monthly payment

obligation, and no past due amount. On September 23, 2015, Experian processed Webb's dispute internally; because Webb's Discover and Bank of America accounts were already reporting as discharged, Experian simply reapplied the discharge status to the accounts. Experian then sent DRNs to Discover and Bank of America informing them that Experian had made changes to Webb's credit file and showing how the accounts were reporting before and after Experian's updates. On September 23, 2015, Experian sent Webb an updated disclosure displaying the information it had in its credit file on her, including the updated accounts.

Since Webb's bankruptcy discharge in January 2015, the only inquiry on her Experian credit file associated with an action Webb took (*i.e.,* an application for credit) was a May 24, 2015 inquiry by Bank of America. A credit denial letter dated May 24, 2015 from Bank of America informed Webb that she was not approved for a Visa credit card "because you have previously filed bankruptcy or have an account included in bankruptcy." (Def.'s SOF, Ex. K at 1; ECF No. 78 ¶ 61.) That denial letter makes no reference to a high balance, payment history, or other information relating to the Bank of America mortgage account.

Webb's Complaint alleges that, as a result of Experian's actions, she suffered damages including the loss of credit, the loss of ability to purchase and benefit from a credit line,

certified mail expenses, other frustration and aggravation, loss of time and money from meeting with her attorneys, and emotional distress. Webb did not seek treatment for depression or emotional distress (opting to "pray[] a lot" instead), nor did she write the dispute letters or pay her attorneys any money to litigate this case. (Webb Tr. 48:13-16, 49:11-20, 51:3-7.)

## II. **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson,* 477 U.S. at 255 (quotation omitted). "To survive summary judgment, the non-moving party must show evidence sufficient to establish every element that is essential to its claim and for which it will bear the burden of proof at

trial." *Life Plans, Inc. v. Security Life of Denver Ins. Co.*, 800 F.3d 343, 349 (7th Cir. 2015).

### III. DISCUSSION

Webb contends that Experian violated the FCRA by continuing to report a positive account balance and scheduled payments past the date of her bankruptcy discharge. Specifically, she alleges that Experian failed to conduct a reasonable investigation of her file, leading to the continued reporting of an outstanding Bank of America mortgage account balance in her Experian credit file. She claims this caused her actual damages or, in the alternative, that she is entitled to statutory damages. These claims implicate two FCRA provisions: first, 15 U.S.C. § 1681e(b), which mandates that CRAs use reasonable procedures to ensure maximum possible accuracy of consumer credit information; and second, 15 U.S.C. § 1681i(a), which requires CRAs to reinvestigate the accuracy of information in a consumer's credit file upon receiving a consumer's dispute notice. Experian argues that it did not violate Sections 1681e(b) or 1681i(a) and that, even if it did, no reasonable jury could find that Webb either suffered actual damages or is entitled to statutory damages.

The FCRA "provides that 'whenever a consumer reporting agency prepares a consumer report it shall follow reasonable

procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.'" *Childress v. Experian Info Sol'ns, Inc.*, 790 F.3d 745, 746 (7th Cir. 2015) (quoting 15 U.S.C. § 1681e(b)). To establish that a CRA failed to follow reasonable procedures pursuant to § 1681e(b), a consumer must show that there was inaccurate information in her consumer credit report because of the CRA's failure to follow reasonable procedures and that this inaccuracy caused her to suffer damages. *See, Lamar v. Experian Info. Sys.*, 408 F.Supp.2d 591, 595 (N.D. Ill. 2006); *Sarver v. Experian Info. Sol'ns, Inc.*, 299 F.Supp.2d 875, 876 (N.D. Ill. 2004).

Once a consumer report exists, the FCRA "triggers various duties on the part of a reporting agency, including the obligation [under 15 U.S.C. § 1681i(a)] to reinvestigate when a consumer contends that [her] consumer report is inaccurate or incomplete." *Ruffin-Thompkins v. Experian Info. Sol'ns, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). If a CRA receives notification that a consumer disputes the completeness or accuracy of information contained in the consumer's file, the agency must "conduct a reasonable investigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item

[of information] from the file" within a designated period of time. 15 U.S.C. § 1681i(a)(1)(A).

However, before it becomes necessary to explore the reasonableness of Experian's procedures ensuring accuracy or its reinvestigation of Webb's credit file, Webb must have adduced proof sufficient to create a triable issue that she suffered damages as a result of Experian's actions. *See, Ruffin-Thompkins,* 422 F.3d at 607-08. The FCRA "is not a strict liability statute." *Sarver v. Experian Info. Sol'ns,* 390 F.3d 969, 971 (7th Cir. 2004). Absent a causal relationship "between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'" *Crabill v. Trans Union, L.L.C.,* 259 F.3d 662, 664 (7th Cir. 2001) (citation omitted).

Even viewing all facts and reasonable inferences drawn therefrom in Webb's favor, the Court finds that she has failed to present evidence creating a genuine dispute of material fact that the stale information Experian maintained in her credit file caused her actual damages. No reasonable jury could find that Experian's actions proximately caused Webb to suffer "the loss of credit" or "the loss of ability to purchase and benefit from a credit line." The evidence of record, including Webb's own statements, furnishes no support for the notion that Bank of

America's denial of Webb's application for a credit card had anything to do with Experian's initial failure to update her file to reflect the discharge of her Bank of America mortgage. First, Webb has not demonstrated that the information provided to Bank of America in response to their credit inquiry reflected Experian's oversight. On the contrary, the undisputed facts establish that, sometime between Webb's first dispute letter in March 2015 and her second dispute letter in September 2015, Experian updated her credit file to indicate that her Bank of America mortgage was indeed discharged. Whether Bank of America received the stale information Webb challenges is a matter of unalloyed conjecture. Second, Bank of America was the very creditor whom Webb left in the lurch when, because of her underwater mortgage, she filed for Chapter 13 bankruptcy. Bank of America's denial letter, refusing to approve her application for a credit card "because you have previously filed bankruptcy or have an account included in bankruptcy," makes no reference to a balance owed on an undischarged account. Instead, it tends to indicate that Bank of America knew of and was troubled by the *fact* of Webb's bankruptcy or, more specifically, that Webb's bankruptcy discharge in fact included her Bank of America account. This helps explain Webb's own testimony that she "wasn't surprised" when Bank of America did not approve her for

the credit card and that, as the mortgage holder, it knew about the discharge of her mortgage account. (Webb Tr. 69:6-10, 71:15-20.) She admitted that "even if Experian had fixed the [Bank of America] account the first time, it looks like this card would have still been denied." (Webb Tr. 75:1-5.)

Bank of America appears on the evidentiary record simply unwilling to extend Webb credit again based purely on what it already knew: that Webb had declared bankruptcy because she could not afford the mortgage on her underwater residential property, which Bank of America had financed and pursuant to which it was forced to foreclose. *See, e.g., Pappas v. Experian Info. Sol'ns, Inc.,* No. 15 C 8115, Dkt. 124, slip op. at 7 (N.D. Ill. Feb. 16, 2017) (finding that pending foreclosures, not any inaccuracy in the plaintiff's credit report, caused the denial of his application for another mortgage). Any connection between the stale information in Webb's Experian file as of March 2015 and Bank of America's denial of her credit card application in May 2015, is unsupported and can only be divined through speculation.

Without evidence linking the information in her credit file to any pecuniary loss, Webb's primary argument for actual damages seems to be that Experian's initial failure to report the discharge caused Webb emotional damages. (*See,* ECF No. 70

("Pl.'s Mem.") at 9.) The evidence offered in support of this argument is similarly inadequate. Because accounts of emotional distress "are so easy to manufacture," the Seventh Circuit "maintain[s] a strict standard for a finding of emotional damages." *Sarver,* 390 F.3d at 971 (internal quotation marks omitted). In cases such as this one, where "the injured party's own testimony is the only proof of emotional damages, [s]he must explain the circumstances in reasonable detail" and "cannot rely on mere conclusory statements." *Id.* The Seventh Circuit routinely finds testimony akin to Webb's insufficient to establish emotional damages. *See, e.g., Bagby v. Experian Info. Sol'ns, Inc.,* 162 Fed.Appx. 600, 605 (7th Cir. 2006) (finding inadequate the plaintiff's "self-serving and conclusory" testimony that she "stress[es], gets tension headaches, and clashes with her fiancé over credit problems"); *Wantz v. Experian Info. Sol'ns, Inc.,* 386 F.3d 829, 834 (7th Cir. 2004) (classifying as too conclusory to support an emotional damages award a plaintiff's statements that viewing adverse credit information was "embarrassing" and that dealing with credit reporting agencies was "mentally and emotionally distressful").

Webb's description of her purported emotional distress is similarly conclusory. She confirmed in her deposition that she is seeking damages for "mental and emotional pain and suffering,

anguish, humiliation, and embarrassment of constant credit denials." (Compl. ¶ 147; *see,* Webb Tr. 46:17-51:9.) Being turned down for credit cards was a "nagging thing" that exacerbated the depression she already felt because of her bankruptcy. (Webb Tr. 47:13-14, 50:17-51:1.) Webb does not specify the nature of any of these issues nor identify other physical manifestations of her alleged distress. But even if Webb's recitation were more definite (and not exceedingly general), there is no evidence from which a reasonable jury could find that Experian's initial failure to report the discharge of her Bank of America mortgage triggered these symptoms. Webb's allegations here, in a recurring theme, are just as consistent with the emotional distress that attends bankruptcy, associated credit downgrades, and residential foreclosure. Indeed, when asked about her claim for emotional damages, Webb stated the gravamen of her injury thusly: "[W]hen you've had an 800 credit score, when you've had beautiful credit, you no longer have a home, I went into a very severe depression." (Webb Tr. 49:21-50:9.) That things weren't "fixed" on her credit report was "just one more thing to it." (*Id.* 50:17-23.) Quite clearly, none of Experian's alleged actions caused her credit to suffer or her home to undergo foreclosure. Rather, the culprit was Webb's own decision to

declare Chapter 13 bankruptcy. Without more, Webb's description of her alleged emotional damages fails to meet the Seventh Circuit's "strict standard." *Sarver,* 390 F.3d at 971.

Launching a Hail Mary, Webb maintains that she can recover under the FCRA because Experian is liable for statutory damages. While true that FCRA violators may be subject to liability for statutory "damages of not less than $100 and not more than $1,000," 15 U.S.C. § 1681n(a)(1)(A), they are only awarded for willful violations of the FCRA. *See, Meyers v. Nicolet Rest. of De Pere, LLC,* 843 F.3d 724, 725 (7th Cir. 2016) (quoting 15 U.S.C. § 1681n(a)(1)(A)). Willful violations can include those that demonstrate "reckless disregard" of a company's FCRA obligations. *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52, 57-59 (2007). However, a company only acts in reckless disregard of the FCRA if the action it takes "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

In support of her argument that Experian knowingly or with reckless disregard violated the FCRA, Webb contends that Experian "fail[ed] to send BOA all relevant information regarding Plaintiff's dispute." (Pl.'s Mem. at 7; *see,* Pl.'s

Reply at 8 (condemning Experian's "failure to notify BOA of the dispute pursuant to 15 U.S.C. 1681i(a)(2).").) This argument could take two forms. Under the first reading, Experian's DRN notification procedures constitute a reckless failure to provide all relevant information to data furnishers following a consumer dispute. Under the second, Experian recklessly violated the FCRA by not sending Bank of America notice of her dispute following her first dispute letter.

Webb offers no legal authority to support the first variant of this argument, and "the plain language of the FCRA does not require . . . documentation" in excess of what Experian provides. *Pappas,* slip op. at 9. There is no controlling legal authority in this Circuit to support the argument that CRAs must provide underlying documentation to satisfy 15 U.S.C. § 1681(a)(2)(B), making the Court "hard-pressed to conclude that Experian knowingly or with reckless disregard violated the FCRA." *Pappas,* slip op. at 9.

The alternative reading of Webb's argument does not advance the ball either, because Experian *does* send DRNs to data furnishers whenever a consumer dispute causes Experian to update account information. In this case, the Experian agent simply overlooked the need to update Webb's Bank of America account information. All the evidence indicates that, had he or she

understood that Webb's Bank of America account was in fact discharged in bankruptcy, the Experian agent would have informed Bank of America of the dispute after updating Webb's information on file. Webb's first dispute letter, without specifying the Bank of America account by name, asked Experian to "update the subject credit file(s) to reflect the discharged status of the debts as indicated on the Final Report from the Trustee." But the letter did not, in fact, include any "Final Report from the Trustee." While it may be debatable whether such a dispute letter triggered any obligation of Experian under Section 1681i, no reasonable factfinder could conclude on these facts that Experian's failure to correct Webb's credit file to reflect her Bank of America mortgage discharge amounted to reckless disregard of its FCRA obligations.

Finally, Webb maintains that Experian "deliberately short-staff[s] its dispute resolution teams" and "provid[es] minimal quality control." (Pl.'s Mem. at 10-11; ECF No. 77 ("Pl.'s Reply") at 10-11.) Webb argues that different policies or more manpower at Experian could have averted the oversight. Maybe, but then again maybe not. Particularly in light of the sleuthing and legal knowledge required of an Experian credit agent to resolve fully Webb's first dispute letter, such an argument smacks of rank speculation unsupported by evidence and

untethered to the inexorable reality of human error. Any failure by Experian to staff its bureaus with additional agents "would evince a careless reading of the statute at worst" and thus fall short of a willful violation. *Jackson v. Experian Info. Sol'ns Inc.,* 15 C 11140, Dkt. 97, slip op. at 11-12 (N.D. Ill. Feb. 16, 2017).

\* \* \*

Thus, Webb has put forth no evidence of actual damages or that Experian knowingly or with reckless disregard violated its FCRA obligations. As such, she fails to establish the necessary element of damages to maintain her claims under 15 U.S.C. §§ 1681e(b) and 1681i(a). The Court therefore grants Defendant's summary judgment motion and denies Plaintiff's summary judgment motion.

## IV. CONCLUSION

For the reasons stated herein, the Defendant's Motion for Summary Judgment [ECF No. 72] is granted and Plaintiff's Motion for Summary Judgment [ECF No. 69] is denied. Civil case terminated.

**IT IS SO ORDERED.**

                                          Harry D. Leinenweber, Judge
                                          United States District Court

Dated: March 16, 2017